UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

April 24, 2025

VIA ECF
All Counsel of Record

## LETTER ORDER

Re:   **J.M. v. Kristi Noem, et al.**
      **Civil Action No. 25-2896**

Dear Litigants:

Before the Court is Plaintiff J.M.'s Motion for a Temporary Restraining Order ("TRO"), ECF No. 4 (the "Motion"). Plaintiff asks this Court to grant the Motion and enter an order "(i) directing Defendants to restore Plaintiff's F-1 student status under the [Student and Exchange Visitor Information System ("SEVIS")]; (ii) requiring Defendants to set aside their F-1 student status termination determination; (iii) enjoining Defendants from terminating Plaintiff's student status" absent applicable regulatory or statutory justification; and "(iv) enjoining Defendants from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction." See Mot. at 15. Having carefully reviewed Plaintiff's submissions,[1] this Court **GRANTS** Plaintiff's Motion pending further proceedings.

**I.   BACKGROUND**

Plaintiff is a citizen of China who currently resides in New Jersey. See ECF No. 4.2 ("J.M. Decl.") at ¶ 2; compare ECF No. 1 ("Compl.") at ¶ 8, with id. ¶ 9. In 2014, Plaintiff received an F-1 visa to study in the United States at Oxford University in Miami, Ohio. See J.M. Decl. ¶ 2; Compl. ¶ 22. In 2018, Plaintiff graduated with a bachelor's degree in Mechanical Engineering. See J.M. Decl. ¶ 2. Plaintiff subsequently returned to China. Id. In 2021, Plaintiff returned to the United States on an F-1 visa to pursue a master's degree in Information Science from Boston University. Id. Plaintiff graduated in January 2023, having successfully obtained the master's degree. Id. After graduating, Plaintiff obtained their Optional Practical Training ("OPT") work

---

[1] The Court acknowledges that Defendants have not yet had the opportunity to weigh in on Plaintiff's Motion. Plaintiff's counsel spoke with Defendants' counsel on April 21, 2025, and April 22, 2025. See ECF No. 4.1 ("Counsel Decl.") at ¶ 2. According to Plaintiff's counsel, Defendants' counsel was "[un]able to state his position on the relief sought in the [Motion]," and was unable to "agree on [a tentative briefing schedule] in the absence of interim relief." See id. ¶ 3. Therefore, this Court deems an ex parte ruling appropriate pursuant to Federal Rule of Civil Procedure 65(b)(1).

authorization pursuant to their F-1 visa and began working at a company in March 2023. Id. Through Plaintiff's science, technology, engineering, and mathematics ("STEM") OPT work authorization, Plaintiff extended their one year OPT work authorization for an additional two years, to March 2026. See id.; see also Compl. ¶ 22. Since receiving the OPT work authorization, Plaintiff has continuously been employed as a Java developer for a major web-commerce platform. See J.M. Decl. ¶ 2; see also ECF No. 4.3 at 1 (describing Plaintiff's role as a "Software Testing and Release Engineer").

On December 11, 2021, Plaintiff was involved in an altercation with their landlord "where the landlord assaulted [them]." J.M. Decl. ¶ 4. According to Plaintiff, "[t]he police were called[] and arrested [them] instead of the landlord." Id. Plaintiff's arrest did not result in an arraignment, and after two court appearances, the Commonwealth of Massachusetts dismissed the case. See id.; see also ECF No. 1.2 (disposition). Plaintiff has no other criminal history. See generally id.

On April 4, 2025, Plaintiff received an email from Boston University informing them that their SEVIS record "had been terminated for failure to maintain F-1 status, and that [their] OPT had also been terminated." J.M. Decl. ¶ 3. Upon further investigation, the official explanation for the termination of Plaintiff's SEVIS record is that Plaintiff was "identified in criminal records check and/or has had their VISA revoked." See ECF No. 1.3. Apart from this, Plaintiff has received neither a direct notification of termination from Defendants nor a direct explanation for Defendants' actions. See Compl. ¶ 24.

Because Plaintiff's SEVIS record has been terminated, Plaintiff is no longer authorized to work. Compl. ¶¶ 4, 27. As a result, Plaintiff is not presently working for their employer, although their employer has not formally terminated Plaintiff's employment. See, e.g., Mot. at 2, 6; see also J.M. Decl. ¶ 6. By consequence, Plaintiff faces "financial and career peril," as their employment is their only source of income. Mot. at 2. Plaintiff lacks any support system, since they have no family nearby and cannot draw on support from their family in China. See J.M. Decl. ¶ 7. Professionally, Plaintiff fears damage to their career and prospects, as disruptions to their sought-after employment will "make it significantly harder to obtain future employment, either in the U.S. or elsewhere." See id. ¶ 6.

Moreover, the termination of Plaintiff's SEVIS record jeopardizes their eligibility to apply for any change of status to a different visa in the future as they accrue unlawful time in the United States. Id. ¶ 7. Finally, Plaintiff fears risk of detention and deportation proceedings, and is "afraid to leave [their] apartment in case [they are] detained by [U.S. Immigration & Customs Enforcement ("ICE")]." Id. ¶¶ 5.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of TROs and preliminary injunctions. Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted). One purpose of a TRO is to "maintain the status quo, defined as the last, peaceable, noncontested status of the parties," pending further proceedings. See Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC, 793 F.3d 313, 318 (3d Cir. 2015) (citation omitted). To establish that they are entitled to

such relief,[2] Plaintiff must demonstrate:

> (1) a reasonable probability of eventual success in the litigation, and (2) that [they] will be irreparably injured . . . if relief is not granted. . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017) (citing Del. River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917, 919–20 (3d Cir. 1974) (citations omitted)); see also Ballas v. Tedesco, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). Where, as here, the Government is the opposing party, the last two factors merge for purposes of the Court's TRO analysis. See Nken v. Holder, 556 U.S. 418, 435 (2009).

### III. DISCUSSION

Plaintiff argues that Defendants' termination of Plaintiff's SEVIS record violates the Administrative Procedure Act ("APA"). Specifically, Plaintiff contends Defendants' conduct violates 5 U.S.C. § 706(2)(A) and (D), which establishes that final agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] without observance of procedure required by law." See Mot. at 9–11. Plaintiff also argues that the Defendants' actions violate Plaintiff's Due Process rights under the Fifth Amendment of the United States Constitution.[3] Id. at 8–9. Because Plaintiff need only establish a likelihood of success on a single claim to obtain a TRO, the Court limits its review to Plaintiff's APA argument. See Pa. Pro. Liab. Joint Underwriting Ass'n v. Wolf, 328 F. Supp. 3d 400, 410 n.2 (M.D. Pa. 2018).

#### A. Likelihood of Success on the Merits

Plaintiff argues that Defendants have violated the APA[4] because they have "no authority to

---

[2] Plaintiff seeks both a temporary restraining order and a preliminary injunction. See generally Mot. For purposes of this Order, the Court's ruling is confined to Plaintiff's request for a temporary restraining order. Nonetheless, it is instructive to note that each mechanism for emergent relief sought essentially requires satisfaction of the same standard, but relief available via temporary restraining order is "ordinarily [limited to] temporarily preserving the status quo," whereas injunctive relief seeking beyond maintenance of the status quo must normally be obtained through a motion seeking a preliminary injunction. Hope v. Warden York County Prison, 956 F.3d 156, 160–62 (3d Cir. 2020).

In addition, "a preliminary injunction must be issued with notice to the adverse party," see id. at 160 (citing Fed. R. Civ. P. 65(a)(1)), but a temporary restraining order "may be issued without notice where it is 'clearly show[n] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,'" see id. (quoting Fed. R. Civ. P. 65(b)(1)(A)). Here, Defendants have received notice of Plaintiff's Motion. See, e.g., ECF No. 4.1.

[3] Here, Plaintiff asserts that "Defendants' failure to provide [them] with notice, adequate explanations, and a meaningful opportunity to contest the termination of [their] SEVIS records and F-1 student status violates [their] [Due Process rights] . . . ." Mot. at 9.

[4] SEVIS termination is a final agency action reviewable under the APA. See, e.g., Jie Fang, 935 F.3d at 185 & n.100; Patel v. Bondi, No. 25-101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025); Student Doe v. Noem, No. 25-1103, 2025 WL 1134977, at *5 (E.D. Ca. Apr. 17, 2025).

3

terminate Plaintiff's F-1 student status [under the SEVIS system]," as nothing in Plaintiff's criminal history or immigration history provides a basis for termination. Mot. at 9–11. Plaintiff is likely to succeed on this claim.

SEVIS termination may occur under two general circumstances: (1) a student fails to maintain status, or (2) the Department of Homeland Security ("DHS") terminates status. See 8 C.F.R. §§ 214.2(f), 214.1(d); see also Patel, 2025 WL 1134875, at *2; Isserdasani v. Noem, No. 25-283, 2025 WL 1118626, at *1 (W.D. Wis. Apr. 15, 2025).

As to the first category, a student fails to maintain status when they fall out of compliance with F-1 status requirements by, for example, not maintaining a full course of study. See 8 C.F.R. § 214.2(f) (listing requirements for F-1 status). Students are also prohibited from engaging in particular conduct, including accepting unauthorized employment, providing false information to DHS, or engaging in criminal activity. See id. § 214.1(e)–(g). Criminal activity is defined to include instances where a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." Id. § 214.1(g).

As to the second category, DHS can terminate SEVIS status (1) "by revoking a waiver that the Attorney General had previously authorized under [Immigration and Nationality Act] § 212(d)(3) or (4)," (2) "by the introduction of a private bill to confer permanent resident status," or (3) "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." Jie Fang v. Dir. United States Immigr. & Customs Enf't, 935 F.3d 172, 176 (3d Cir. 2019) (quoting 8 C.F.R. § 214.1(d)).

On the current record, there is no basis to terminate Plaintiff from SEVIS. See Compl. ¶¶ 1–3, 22, 42–45 (alleging that Plaintiff has not committed any act that would jeopardize their compliance); Mot. at 9–11 ("Plaintiff has . . . fully complied with the F-1 status requirements. [They have] maintained a full course of study and never engaged in unauthorized employment."). And based on all known information, Plaintiff has not engaged in unauthorized employment and has not provided false information to DHS. To the contrary, they have always been in compliance. Id.

Plaintiff was involved in an altercation with their landlord where the landlord assaulted Plaintiff, but after the police arrived, Plaintiff—not the landlord—was arrested. See J.M. Decl. ¶ 4. Plaintiff, however, was not even arraigned before the Commonwealth of Massachusetts dismissed the case on the prosecutor's motion. See id.; see also ECF No. 1.2 (disposition). Plaintiff has no other criminal history. See generally id. And the governing regulations here provide that a student is out of compliance only if they are convicted of a crime punishable by a year or greater. 8 C.F.R. § 214.1(g). Having been "identified" in criminal records is not enough. There was no basis to terminate them from SEVIS. Cf. Isserdasani, 2025 WL 1118626, at *4 (holding that, even if plaintiff's misdemeanor offense qualified as a crime of violence, the charge was not ultimately pursued and plaintiff was never convicted).

Finally, nowhere in the record can the Court discern that any of 8 C.F.R. § 214.2(f)'s requirements have been met. There is no record of waiver revocation, a private bill to confer permanent resident status, or notification in the Federal Register.

Accordingly, this Court concludes that Plaintiff "has shown a substantial, if not overwhelming, likelihood of success on the merits," Isserdasani, 2025 WL 1118626, at *5, based on their claim that Defendants—acting in an arbitrary and capricious manner and without a lawful or rational basis to terminate Plaintiff's SEVIS status—have violated 5 U.S.C. § 706(2)(A). See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (noting that "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency," the agency must nevertheless "examine the relevant data and articulate a satisfactory explanation for its action. . . ."); See also Jie Fang, 935 F.3d at 185 n.100 ("[I]t is easy to see why the students desire review—DHS appears to have terminated their F-1 visas without the statutory authority to do so. As discussed above, the ability to terminate an F-1 visa is limited by § 214.1(d)."). And by failing to adhere to any apparent applicable procedure, Plaintiff has demonstrated a likelihood of success on its claim that Defendants have taken action "without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(D). See Oruganti v. Noem, No. 25-00409, 2025 WL 1144560, at *7 (S.D. Ohio Apr. 18, 2025) ("Defendants' termination of her SEVIS record and F-1 student status was not in compliance with the applicable statutory regulations and was therefore arbitrary, capricious, an abuse of discretion, not in accordance with the law, or otherwise without observance of procedure required by law." (citing 5 U.S.C. § 706(2)).

### B.   Irreparable Harm

Plaintiff next argues that they will suffer irreparable harm if a TRO is not issued because Defendants' revocation of Plaintiff's F-1 visa and termination of Plaintiff's SEVIS record (1) has resulted in the immediate loss of their employment, which further risks irreversible damage to Plaintiff's efforts made towards their past educational pursuits and future career growth, (2) risks Plaintiff's detainment, placement in removal proceedings, and/or deportation, and (3) causes the current and continued suffering of Plaintiff's mental health and emotional well-being. See Mot. at 11–13; see generally J.M. Decl.

The Court agrees that Plaintiff will suffer an irreparable harm that cannot be redressed by a legal or an equitable remedy following a trial if a TRO is not issued. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009). First, Plaintiff attests to no longer earning an income from their employer, because they are no longer authorized to legally work. See J.M. Decl. ¶¶ 6–7; Mot. at 3. And while an injury measured solely in monetary terms, including the termination of one's employment, is not definitively recognized as irreparable harm, see, e.g., Liberty Lincoln-Mercury, Inc., 562 F.3d at 557, Plaintiff's employment is tied to their immigration status, which is in turn tied to their right to remain lawfully within the United States.

This notwithstanding, Plaintiff faces actual and imminent harm to their academic and professional progress made thus far. Plaintiff had pursued and obtained a bachelor's degree and master's degree from two American universities in six years and has built their career in the United States over the last nine years. See J.M. Decl. ¶ 2; Compl. ¶¶ 22, 28. Other courts addressing this issue have recognized that the loss of academic progress is sufficient to demonstrate irreparable harm. Isserdasani, 2025 WL 1118626, at * 5 (citing Liu v. Noem, No. 25-133, op. at 4 (D.N.H. Apr. 10, 2025)); see also Doe v. Noem, No. 25-633, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (collecting cases).

Next, Plaintiff has reason to believe that they may be accruing unlawful presence time since

they now lack valid F-1 status. See, e.g., J.M. Decl. ¶¶ 5–6. Past a certain point, unlawful presence time will bar their future admission and re-entry to the United States. See 8 U.S.C. § 1182(a)(9)(B). Other courts have found—and this Court agrees—that the accrual of unlawful presence time is an irreparable harm because it may prevent Plaintiff from initiating or completing the process of lawfully returning to the United States. See Doe, 2025 WL 1141279, at *8 (collecting cases); see also Patel, 2025 WL 1134875, at *2 ("[T]he . . . potential accrual of time out of lawful status that could not be regained constitute[s] an immediate and irreparable harm to Plaintiff warranting a TRO.").

Plaintiff also rightly notes that Defendants "have made a practice of transferring detained individuals far away from their domicile, family, and school to detention centers in the states of Texas and Louisiana." Mot. at 11. The Court finds that Plaintiff's fear and concern of similar actions happening to them is not hypothetical or speculative. See J.M. Decl. ¶ 5 ("As a result of this termination, I am . . . at risk of detention and deportation proceedings. As it is, I am afraid to leave my apartment in case I am detained by ICE and placed in removal proceedings.").

Finally, Plaintiff experiences significant stress and anxiety stemming from the ongoing and potential consequences of Defendants' unlawful conduct—including their inability to continue their employment, earn an income, and avoid detention, incarceration, and deportation. See generally J.M. Decl. Plaintiff is currently "living in fear of detention and removal by ICE." Id. ¶ 7; see also id. ¶ 5 (declaring as to being "afraid to leave [their] apartment in case [they] are detained by ICE and placed in removal proceedings"). Plaintiff's claims of severe mental distress, when coupled with their allegations of financial harm, loss of present and future employment opportunities, and potential detention and/or deportation, adequately constitute irreparable harm with no adequate remedy at law. See, e.g., Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1192 (N.D. Cal. 2015) (holding that "[e]motional distress, anxiety, depression, and other psychological problems can constitute irreparable injury."); Doe v. Noem, 2025 WL 1141279, at *8 ("[I]n this case, the ordinary harms of removal would compound the other harms Plaintiff faces by effectively eliminating his ability to complete his degree program, causing him economic and reputational loss wherever he ultimately resides.").

For these reasons, the Court finds a TRO is necessary to prevent Plaintiff from suffering irreparable harm because of Defendants' revocation of Plaintiff's F-1 visa and termination of Plaintiff's SEVIS record.

### C. Balancing Test

Finally, Plaintiff contends that the balance of equities and public interest weighs in favor of granting the Motion. See Mot. at 13–15. Again, the Court agrees. Although Defendants have not yet had a chance to respond to Plaintiff's Motion, it is unlikely that any harm will come to Defendants because of this TRO.[5] Considering the relatively short time between entry of the TRO and a hearing before this Court, this TRO cannot credibly interfere with Defendants' enforcement priorities. See Doe v. Noem, No. 25-00023, 2025 WL 1161386, at *7 (W.D. Va. Apr. 21, 2025) ("[W]hile the Executive Branch has broad authority to enforce immigration laws, there is no public

---

[5] For this reason, among others, this Court exercises its discretion to waive Rule 65(c)'s bond requirement.

interest in allowing them to act outside the law.").

On the other hand, Plaintiff is allegedly facing significant harm, already discussed at-length above. Since Plaintiff has lawfully resided within the United States, they have worked hard to accomplish impressive goals, earning a bachelor's degree and a master's degree, securing a well-paying job, and maintaining that employment until the unexpected termination of their SEVIS status. See J.M. Decl. ¶¶ 2–4, 6–7. That termination has seriously impacted Plaintiff's professional path, personal life, and mental health. See generally id. This calculable harm to Plaintiff strongly outweighs any potential harm that may come to Defendants, considering there is no lawful reason why Plaintiff is undeserving of the fruits of their years-long efforts.

Additionally, Plaintiff argues that their employer is an "interested person" that the Court should consider in balancing the equities. See Mot. at 13; Del. River, 501 F.2d at 919–920. Indeed, Plaintiff's employer wrote a letter "in [s]upport of [Plaintiff's] F[-]1 OPT nonimmigrant status reinstatement," in which Plaintiff's employer—company "A," for purposes of preserving anonymity—states that it "strongly supports [Plaintiff's] request for a Preliminary Injunction, which would allow [them] to resume working . . . as [their] inability to work is causing irreparable harm." See ECF No. 4.3 at 1.

Plaintiff's employer explains that Plaintiff's SEVIS record termination has caused "significant disruption to [company] A." Id. at 2. Plaintiff's employer describes Plaintiff as "vital" to the company and their contributions as "critical to fulfilling [the company's] client obligations and maintaining [the company's] contractual relationships." Id. at 1–2. The company spent time and resources on Plaintiff's development by enrolling them into an "intensive and structured training initiative," then assigning them to a long-term, client-facing project that is set to run through at least January 2026. Id. The company states that since Plaintiff's SEVIS termination, that project has been interrupted and the company is in jeopardy of missing client deliverables. Id. at 2. The Company apparently faces contractual liabilities because of Plaintiff's inability to work, including "early termination fees and reputational harm with [their] longstanding client and subcontractor partners." Id. Based on these facts, the Court finds that the prejudice suffered by Plaintiff's employer as an interested third party is significant and weighs in favor of issuing the TRO.

Likewise, the public's interest weighs in favor of entering the requested TRO. Ensuring that SEVIS terminations occur in compliance with applicable law is undoubtedly in the public interest. See Doe, 2025 WL 1141279, at *9 ("The public has a vested interest in a federal government that follows its own regulations."). Cf. Town of Newton v. Rumery, 480 U.S. 386, 400 (1987) (O'Connor, J., concurring) ("The public has an interest in seeing its laws faithfully executed."); St. John–St. Thomas Hotel & Tourism Ass'n, Inc. v. Government of the Virgin Islands, 41 V.I. 317, 337–38 (D. VI. 1993), rev'd on other grounds, 218 F.3d 232 (3d Cir. 2000) (noting that the public has an interest in the executive branch's compliance with federal law). Moreover, New Jersey and its taxpayers have an interest in ensuring that its residents can pursue higher education and obtain gainful employment resulting therefrom, so long as such pursuit is legally permissible. Therefore, the balance of these remaining factors weigh in favor of granting the requested interim relief.

## IV. CONCLUSION

Plaintiff's Motion, ECF No. 4, is **GRANTED**. Defendants are temporarily enjoined from the date of this Order until the conclusion of the Preliminary Injunction hearing on May 7, 2025, as follows:

(1) Defendants shall restore Plaintiff's SEVIS record and status and set aside Defendants' termination of Plaintiff's SEVIS status;

(2) Defendants are enjoined from directly or indirectly enforcing, implementing, or otherwise imposing any legal consequences as the result of Defendants' decision to terminate Plaintiff's SEVIS records, including arresting, detaining, or removing Plaintiff from this Court's jurisdiction, or ordering the same, without providing adequate notice to this Court and to Plaintiff's counsel, as well as sufficient time to contest any such enforcement action.

**IT IS FURTHER ORDERED** that Plaintiff shall file, under seal, identifying information including full name, address, and date of birth, or any other information required for Defendants to reinstate their F-1 student status in SEVIS.

**IT IS FURTHER ORDERED** that Defendants shall file their response to Plaintiff's Motion on or before May 1, 2025, by 5:00 PM EDT. Plaintiff shall file their reply brief on or before May 5, 2025, by 9:00 AM EDT. Temporary restraints will remain until the conclusion of the Preliminary Injunction hearing on May 7, 2025, as described above and below. Should either party have any objections to the foregoing briefing schedule and the duration of restraints, they shall advise the Court immediately, and no later than April 25, 2025, 5:00 PM EDT, in which case the Court will impose a more expedited briefing and hearing schedule.

**IT IS FURTHER ORDERED** that a Preliminary Injunction hearing shall be held on May 7, 2025, at 2:00 PM EDT at the Martin Luther King Federal Courthouse in Newark, New Jersey.

**IT IS FURTHER ORDERED** that by or before May 1, 2025, at 5:00 PM EDT, Defendants must provide a list of witnesses expected to testify, if any, and include a brief summary of their expected testimony and the expected length of their testimony, if applicable. Plaintiff must do the same by May 5, 2025, 9:00 AM EDT.

SO ORDERED.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**